Good morning. This is case number 1-17-0500, People of the State of Illinois v. Marion Andre Comair. My name is Nathaniel House. I'm a Justice of the Appellate Court and presiding on this case with me are Justices Margaret McBride and Justice David Ellis. This case is being heard via Zoom because of the COVID crisis and we have special procedures that we're going to follow. What we're going to do is allow each side to have 10 minutes of uninterrupted statement and that'll be followed by questioning by the members of the panel. The appellant will have a short period of time for rebuttal. What we're going to do though, we have three cases up this morning. Normally we're very flexible with our time, but if we're too flexible today we'll be rude to the parties that are following, so we're going to kind of stick to our time frame. Does anyone have any questions about how we're going to proceed this morning? No. Okay. Will the parties who are going to make a presentation please state their names and a party they represent? Good morning, Your Honors Counsel. Lauren Bowser from the State Appellate Defender on behalf of Marion Comair. Good morning, Christine Cook, Assistant State's Attorney on behalf of the people. Okay. All right then. With that, Ms. Bowser, you may proceed. Thank you. In a prosecution for a felony murder based on arson, there are two critical things for the state to prove. That the fire resulted from an arson and that the defendant was the arsonist that denied Marion Comair a fair trial on both of those aspects of the state's case. The court crippled Comair's ability to present a defense and explain his inculpatory statements to the jury, and they allowed an expert to testify who relied on Comair's statements rather than on proper scientific basis in reaching his conclusions about the fire. Turning to the first issue, the court denied Comair his constitutional right to present a defense where the court forced him to decide between presenting a defense and explaining why he maybe made his inculpatory statements or submitting to an examination by the state. Specifically, the court ruled that Comair could present an expert who had examined him many times over the months leading up to the trial who might explain some of his mental defects and why he maybe made some of these statements. However, the court then conditioned his right to call that witness on his submitting to a psychiatric examination by the state's court. That ruling was error. Under the Illinois Code of Criminal Procedure, the only time a defendant can be forced to submit to an examination is when he's raising an insanity defense or a not guilty, sorry, not guilty by reason of insanity or intoxication or drug condition defense. And here Comair was doing none of those. He was simply presenting this evidence to help explain why he made these statements. The court ruled that under 115-6, this only comes into play when one of those defenses is being raised. The state cannot force the defendant to submit to an examination simply because he's putting his mental condition at issue in another context. The court there did recognize that there may be some difficulties for the state when it's only able to cross-examine a witness rather than conduct its own examination. However, the court ruled that currently the situations in the statute are the only times when a defendant can be forced to submit to such an examination. So there was no legal basis for the court ruling in this case. Comair was not pleading insanity simply because he wanted to put his mental condition at issue. And we do have cases that support that notion that putting your mental state at issue in a different context is not akin to a de facto insanity defense as the court ruled here. And this was a this was the series of inculpatory statements that Comair made on the overhear that was recorded by a witness bringing a Robertson was the was the crux of the state's case. The state concedes on appeal that these were unquestionably the most damning evidence at trial. And this court has repeatedly recognized that confessions are often the most powerful and persuasive piece of evidence to be used against defendant. They carry extreme probative weight for a jury. And when Comair was denied his ability to explain these statements, he was effectively prevented completely from presenting any defense. Absent these statements, the state had circumstantial evidence that Larry Myers, the owner of the building here, was seeking somebody to burn down this fire, burn down this building because he was a precocious financial position. He had offered several witnesses money to burn down the building. The only evidence that Marion Comair was the one that did this came from his statements. All the state's remaining circumstantial evidence doesn't speak to who burned down this building, and that was Mr. Comair. So the state simply cannot show that the centerpiece of its case, these recorded statements on the overhear, did not affect or likely contribute to the jury's verdict. We cannot prove beyond reasonable doubt that Comair's inability to challenge these statements was harmless. Turning to the second issue, Comair was also denied a fair trial where the fire marshal was permitted to offer three expert opinions that lacked a proper scientific basis and were inconsistent with the accepted scientific methodology and fire in person investigations. Specifically, fire marshal Kushner opined that the fire was an incendiary fire, an arson, that an accelerant was used, and that this fire was lit by an open flame. He admitted that he had no physical evidence to support any of these three conclusions and that he reached his conclusions by relying on witness statements and by using the process called the negative corpus. The witness statements, of course, were Bonita Robertson's statements that she told the police that were based on evidence. The state was allowed here to bolster its case by saying we have the scientific evidence that supports our case and supports that Comair's statements were true, but they were actually based on those exact same statements. So where the fire marshal here deviated from the NFPA standards, the National Fire Protection Association standards, admitted that he relied not on no longer permissible use of the negative corpus. He should not have been allowed to testify as an expert and give those opinions. He should have classified this as an undetermined fire and not been allowed to give expert opinions that were not based on science. Just briefly, oftentimes when we have two experts testifying, like we had in this case, the court will say this is just a battle of the experts, it goes to weight, not admissibility, but here we have the rare situation where the expert gets on the stand and his testimony makes clear he's not actually using scientific method. So this isn't a case where two experts both use the proper methodology and simply reach different conclusions. Here, his testimony should have been excluded because he wasn't relying on a proper scientific basis. And the Jackie Packer case cited in the briefs illustrates that in a similar situation. There, the court dealt with a state expert and defense expert who reached different conclusions, both acknowledged the relevant guidelines that they were following, but once the state expert testified, it became clear he hadn't actually appeared those guidelines. In that case, the court said that because this wasn't just, again, a case of two competing experts, it was an expert who did not offer an expert opinion based on scientific or actual expert, had an expert basis for that opinion, it should have been excluded entirely. So that's what should have happened here. Kushner should not have been allowed to testify that this was an arson, that the open flame was used, and accelerant was used, because the state used those to bolster its theory of the case, that Comey's statements had this outside corroboration, but again, those findings by Fire Marshal Kushner were based entirely on Comey's confessions in the first place. So again, the state can't show that this was a harmless error where it used it to the case that directly tied this to Comey after he was also prohibited from presenting his own ways to explain to the jury why he maybe made those statements. So with your honors, that concludes my presentation. Your honors have questions. Thank you. Justice McBride, do you have any questions? I do. Ms. Bowser, you would agree that the standard of review for a ruling on the regarding the over here, or actually ordering the defendant to be examined, that we review that for an abuse of discretion? Yes, your honor. All right. Would you also agree that the United States Supreme Court long ago held that when a defendant puts his sanity or competence or even the, well, we have a guilty but minimally ill statute, that the Constitution allows for the examination of an expert by the state to rebut a claim of insanity? Yes. And in those circumstances, the Fifth Amendment right is not violated. Would you agree with that? Right. Would you also agree in this case that this is not a state action in terms of an actual confession, but rather an admission during a third party conversation in a consensual over here? Yes. All right. Now just also, 725-515-6 does allow for, actually it requires the court, the court shall appoint a psychiatrist when a insanity defense is raised. Correct? Correct. All right. And in this case, there's other language in that statute that says if it appears that the defense of insanity or not guilty by reason of, I'm sorry, not guilty but mentally ill, pardon me, that that statute also says that if it appears that a defense of that shall be raised, the court can also appoint a psychiatrist. Is that true? Correct. In this case, didn't the judge specifically say that the report that was prepared by the psychologist in this case raised actually indicated that the defendant suffered from three mental diseases or defects listed in the DHM 5. Is that true? That's correct. All right. So the court actually said that what you're trying to do indirectly is raise the issue of the defendant's sanity. He said that, you know, this evidence could be interpreted by a jury as these statements were made by someone who was insane at the time or maybe mentally ill. Isn't that in the record in this case? Yes, Your Honor. All right. So how do we say the court abused its discretion? Because the court didn't say you cannot put on this witness. The court said if you're going to raise this issue, if you're going to have this before the jury, the state is entitled to rebut it via their own examination. Well, because presenting evidence of your mental conditions is not akin to raising an insanity defense. There are a lot of defendants who have mental defects that are on the DSM 5 that are not insane and they're not raising an insanity defense at trial. An insanity defense requires the defendant to admit to guilt and simply says my mental capacity renders me unable to understand the criminality of my offense. Here, Comier was not admitting guilt. This is not a de facto insanity defense. Anytime a defendant has mental health issues, many do, they're not all raising an insanity defense. But again, the case law on a defendant's ability to present all the circumstances to explain why he made a confession, if this is something that, you know, the state is entitled to cross-examine an expert, the state is entitled to put on witnesses who know him and say, oh, he's perfectly fine, that's nonsense. The only thing they cannot do is force him to submit to this examination. And I would point out in its brief on appeal, the state is arguing, oh, this is a harmless, you know, this is harmless because we could have simply cross-examined him and he would have faltered on cross-examination. They can cross-examine him. He's entitled to put this witness on, and the jury's entitled to hear it and decide whether they credit this, that it might have affected how he makes his statements, you know, why he makes his statements. But you're basically saying that only you get to call an expert, and that the state doesn't have the right to rebut this with scientific evidence. You're choosing who you can call and who the state can call. Aren't you really asking to have your cake and eat it too? Not at all. The state is entitled to call experts that can review the findings. The state did have experts that reviewed the reports. The fact that they can't offer the kind of testimony the state wanted doesn't mean that they're not entitled to test the defense and to cross-examine the witness and to review his conclusions. Well, when the statute, and first of all, this is not like Lee or Harlacker. I don't think you've cited a single case where the court was found to have abused its discretion in allowing for an examination. But why does the statute allow for an examination of the defendant by way of a psychiatrist? Why does the statute permit that in the insanity cases, in guilty but mentally ill cases, and in other cases where a defendant would put his mental state in issue? That's a good point, Your Honor. The reason that, you know, those cases allow for an examination is because the defendant there is admitting to the crime and simply saying there's these additional things that would render me not culpable. The risk that a defendant could make incriminating statements and blurt something out during an examination by the state's expert, the interests there are lessened when the defendant is admitting to guilt and really just putting his mental state at question as a permanent defense. In the case here where the defendant is denying that he's done the crime, committed the crime, you know, different interests, you know, his interest in not submitting to a forced examination by the state wherein he could blurt something out are heightened. And again, where the expert in this case specifically said some of the things he does, he's got some reality testing issues and says things that might not be true, the risk is even higher here that he's going to say something like that and talk about the crime. Didn't the trial judge specifically tailor this so that the defendant could not be questioned at any time about the offense? But how can he ensure that the defendant isn't going to blurt something out? How can we talk about his mental state around the time of the crime without running a risk that he starts saying things about the crime? The trial courts, trial courts enter motions in limine all the time. Witnesses are told that they can't say certain things. But anyway, I understand your position. My last question is, is that the trial judge also pointed out that the I'm sorry, that's wrong. The judge pointed out that the statute says that this shall be done in these cases, but it's not a prohibitive statute. What do you say to that? I mean, I think that Lee says it is a prohibited. Court makes it very clear that in Lee, that again, sympathetic to the state's position, but the court Lee specifically says, we have to enforce the Supreme Court rules and the statute as they are currently written. And they did read that as an absolute prohibition going beyond those circumstances. Well, right after Lee was decided, the legislature amended the statute, and in fact, allowed for this kind of testimony in a sentencing hearing. I mean, that's that's what happened, right? All right. All right. I have no further questions. That's probably too many. All right. Justice Ellis, do you have any questions? Briefly, thank you, Justice House. Counsel, you know, the statutes, Statute 115.6, as you've pointed out, identifies particular instances where you must allow the state to examine. I'm piggybacking a little bit on what Justice McBride said. And your position, and I think it's probably right, is that those don't apply here. There's no insanity defense, no guilty but mentally ill or drugged condition. But I mean, does Lee really say, in the context of a trial, not a sentencing hearing, in the context of a trial, that the judge is foreclosed from setting up some kind of a opportunity to contest the evidence you want to put in? He tries to put some restrictions on it to protect the constitutional rights of the defendant at the same time. I mean, there's nothing, there's no statute that says he, the trial judge cannot do that, is there? You know, Lee doesn't address a trial situation, you're right. He's talking about sentencing, but the reasoning of Lee obviously would apply in a trial even more so where the defendant is still presumed innocent. In a sentencing hearing, he's already been convicted. And the concerns are less than a defendant who is submitting to a pretrial, when the state's still investigating, asking him to submit to a pretrial examination where he could blurt something out that could help the state's case. Those concerns are lessened in a sentencing hearing. What constitutional principle is underlying this whole thing, this whole idea that the state cannot just freely examine the defendant? Is it the Fifth Amendment? The Fifth Amendment. Is it self-incrimination, the right against self-incrimination? Correct, correct. It's not compulsory process? The defendant's right to present a defense and then to explain the circumstances of his confession do implicate compulsory process clause. So the state is forcing him to choose here between which of these constitutional rights he wants him to, which one he has to choose between these rights at his trial. I understand. I've concluded. Justice House, thank you. Okay, thank you. Thank you, counsel. The state's expert, didn't he rely, he didn't just rely on the statements of the defendant to form his conclusion about the accelerant. Didn't he also rely on his experience and knowledge in the field and the way he's done things in the past to form a conclusion that it was an accelerant? And isn't that what we have experts to do, to give their opinion on things that are not known to common people? Yes, Your Honor. So he did rely on his experience, his investigation of the scene. He said the witness statements. The problem is the NFPA 921, which he acknowledged, are the guidelines he's required to use. They have been incorporated into the Illinois Fire Code. State, explicitly state, it is improper to opine a specific fire cause, ignition source, or classification that has no physical evidence to are eliminated. And that was part of the 2011 updates to the fire code that eliminated this use of negative corpus, i.e. process of elimination to opine on an ultimate conclusion about the fire. As both witnesses acknowledged, she's allowed to consider all of that in forming a hypothesis. However, his ultimate conclusion has to be backed by physical evidence. And he admitted there was no physical evidence of an accelerant being used, of an open source, or that this was ultimately an incendiary fire. But does that go to the weight of his testimony instead of the admissibility? I'd argue it does not when it's flatly contrary to what the NFPA guidelines allow. He didn't simply reach a different conclusion. He admitted, I rely on negative corpus and witness statements to reach these ultimate conclusions. And again, section 19 of the NFPA guidelines that I just read, make it clear you cannot do that. It's no longer allowed in arson science. It's no longer considered the proper scientific method. All right. Do either of my colleagues have any other questions? No. If not, we'll move on to Ms. Cook. Thank you. Thank you. May it please the court, counsel Christine Cook. At no time in this case was the defendant ever deprived of his right to present a defense. The defendant is cleverly using his mental status as a shield and as a sword. The trial court in this case properly ruled that the defendant was not constitutionally allowed to present unrebutted evidence about the defendant's mental state. The defendant had plenty of opportunities to present a defense. And in fact, he did. He had his co-defendant, Larry Myers, testifying. There was plenty of evidence for a defense. This is not it. I would like to just review quickly when Dr. Frumkin was originally tendered, the state moved to bar him. And there was quite a bit of back and forth about the state requesting a BCX from the defendant that was denied because there was no bona fide doubt of his fitness or sanity. And then the state moved to bar his testimony. The defendant was only willing to tender Dr. Frumkin's reports throughout the pretrial proceedings. Defense counsel was adamant that they would never tender the defendant for an examination. So many processes were ensued after this. We originally hired Dr. Henry, a psychiatrist. He reviewed Dr. Frumkin's reports and the COH recordings. And he opined that he needed to personally evaluate the defendant in order to determine whether or not Dr. Frumkin's opinion was correct and whether or not defendants suffered from these three unspecified disorders. Then the trial court said that there would be no inquiry into the facts, only the diagnosis, which takes us out of a Fifth Amendment issue completely. And the trial judge compared this case to the Sexually Violent Persons Act, which also has Fifth Amendment implications, but yet still allows the state to cross-examine or to properly allow a defendant to be examined without eliciting the facts of the crime, which is where the Fifth Amendment privilege lies. We then hired Dr.  And Dr. Hartman said that he could probably examine the defendant without asking about the crime. But Dr. Frumkin's notes were completely inadequate and he needed a personal evaluation of the defendant. So the trial judge properly balanced the 115-6 and a whole lot of other determinations and properly ruled that the defendant was not entitled to unrebutted psychiatric testimony. There is no Fifth Amendment implication here because the trial court specifically ruled that the doctor, whoever was going to examine the defendant, would not be able to ask him about the crime. And even if he did, that is easily redacted before trial and all of those things. There's no Fifth Amendment implication here. It's interesting to note that the defendant, as Justice McBride, you pointed out, there is no case law supporting the defendant's authority here. In the reply brief, the defendant cites People v. Lee. That dealt with discovery rules and capital sentencing hearings. But what's really interesting about People v. Lee is when that is shepherdized, this case of Nebraska v. Vella comes up and they note that Lee is the only case that holds a trial court may not order an independent evaluation in the absence of specific authority by statute or Supreme Court. Footnotes in Lee are especially instructive. In the footnote by Justice Thomas, in one of his two dissents, he cited People v. West and Ramirez, both state cases. But more importantly, he cites the case of Buchanan v. Kentucky, a U.S. Supreme Court, which finds that the defendant's attempt to present evidence of extreme emotional disturbance was certainly not a Fifth Amendment privilege because the defendant waived that when he raised his mental status and that the state was more than entitled to rebut that psychiatric testimony. After Buchanan v. Kentucky, which was 1987, the Supreme Court in Kansas v. Cheever at 571 U.S. 87, a 2013 case, held that the Fifth Amendment does not prohibit the government from introducing evidence from a court-ordered mental evaluation to rebut the defendant's expert. The court ruled, and I quote, When a defendent presents evidence through a psychological expert who has examined him, the government, likewise, is permitted to use the only effective means of challenging that evidence testimony from an expert who has also examined him. The Kansas v. Cheever case set a man who was not guilty from 1973 to $550 a year. The court found that this is really important that the state be allowed to elicit this type of evidence from their own expert, because any inference could be made that the evidence presented by the defendant is true and it's uncontradicted, and excluding this type of evidence would undermine Buchanan in the core truth-seeking function of a trial. And let's remember, the only purpose for the state's psychological expert to examine the defendant is solely to rebut the defense expert about the defendant's psychological status. It has nothing to do with the crime itself. This does not implicate any type of Fifth Amendment privilege whatsoever. Furthermore, we didn't argue that this was just a harmless error. We want the court to know that there are COH admissions of Myers and Robertson that go on for quite a while. I think she was wired up for about 10 days. There was the testimony of Robertson, Pincus, and Trent's testimony that the defendant had repeatedly agreed to set the fire before it happened. The defendant and Myers were the only people that were not at the scene. The defendant was the caretaker of the building. He was the superintendent who did everything. Myers had this dire financial situation, and then there was the cell site and tower records, which are really also incriminating as well. There is no way this defendant could ever explain what he was doing at that building at 634 in the morning as his phone records put him there at that time and on the cell tower records. Mr. Myers was presented to try to explain a lot of that. This then turns to the fire expert Kushner. Our argument for the fire expert is that he never testified, and our brief in this record is replete with evidence. He never determined through the testimony that he relied on negative corpus to determine anything. I would like to direct this court's attention to the fact that Kushner testified that negative corpus was not the standard, but was used in the process. It was falling into disrepute, and the standard now was to back up the findings with physical evidence, if available. He determined that the flame was set by an open flame based on Benita Robertson's statement. That is allowed by the NFPA. That statement is used in the scientific method, is allowed by the scientific method, which he added to the data process. And then he used negative corpus solely to eliminate the other possible causes, not for his finding. The basis for his finding, Justice House, as you noted, was his examination of the fire scene and the witness statements pursuant to 921 and its training and expertise. His investigation also proves that he did not rely on negative corpus in order to make his determination. He originally went to the fire scene on the day of the fire on February 14th, and he examined the scene. He went back the next day on February 15th, and he returned with his arson dog, Radar, who climbed on the debris, but did not alert to anything. On the 16th, Mr. Kushner eliminated the natural, electric, or accidental causes. On the 18th, that's when he learned about Benita Robertson's statement. The fact that the defendant procured this evidence through Myers also prohibits this court from having to go into this. Myers made this a whodunit, not a howdunit. Myers testified not just because the testimony was allowed. He was testifying because he needed to attack Robertson's credibility. He needed to explain the phone call at 634 from the fire scene, and he had to explain the context of the COH being real estate commissions and not the procurement for setting the arson. The evidence in this case was beyond overwhelming. There was no single evidentiary ruling that was an abuse of discretion. And for all those reasons today, and those stated in our brief, the people respectfully request that this court affirm defendant's seven murder convictions. Thank you. Justice McBride? I don't have any questions at this time. Justice Ellis? Do you have any questions? Yes, I do. Sorry, I was unmuting myself. So, Ms. Cook, thank you for your presentation. When I read Lee, it seems as if Lee goes through the different things that might have authorized a court-compelled evaluation of the defendant. They looked at Supreme Court rules, they looked at a statute, and when they came to the conclusion that none of those applied, they said it was error to do it. They didn't fall back on some kind of a generalized idea that, okay, well, just because there wasn't a specific authorization to do it, it doesn't mean it was prohibited from doing it. They actually said without an authorization, you can't do it. Am I reading that wrong? No, Lee has a very, very narrow holding. That's literally what they say. However, there's this plethora of U.S. Supreme Court cases that allows this, and specifically states, if the defendant starts this process, the state gets to finish it. Lee, I think, is very narrow, probably badly decided. It's never been cited as authority for anything. As I noted, the Nebraska Supreme Court oddly noted that it is the only case out there that says the only way you can introduce this evidence is if you are specifically allowed by statute or Supreme Court rules to do so. Of course, we have plenty of evidence of relevance and reliability that allow for that. That's outside of those two limitations, as the U.S. Supreme Court notes. Yeah, I'm certainly sympathetic to the idea that it doesn't seem particularly fair to allow the defense to bring in a witness with some initials behind his or her name and testify about such things and deprive the state of the opportunity to rebut. I take your point that there are U.S. Supreme Court cases and federal decisions talking about this from a purely constitutional perspective. I didn't read Lee as grounding what they were doing in the Constitution so much. Right. As I read this decision, they just kind of said it's not authorized by this, it's not authorized by that. Ergo, you can't do it, and it was error. Right. And that is the court directly above this court. It is. I don't think we have the luxury of saying Lee was wrongly decided, whatever we may think of Lee. What I'm trying to get from you is, are you offering a distinction of any kind of Lee? Sure. Lee also involved the discovery in capital sentencing hearings. We're in a trial setting. So from that viewpoint, you could just say it's unreliable and inapplicable to this case. This is a trial ruling, a pretrial ruling, in fact. It has nothing to do with capital sentencing and discovery, which is what Lee involved. So your opposing counsel said in response to one of our questions, I think it was mine, that the concerns would be much greater at trial than they would be at sentencing, right? Because at sentencing, you've been convicted. You're not as likely to incriminate yourself after you've already been convicted. I suppose you still could, of course. But at the trial stage, these concerns are even greater. So is that a distinction that would allow us to say that we don't need to pay attention to Lee? No, it's a different format. The defendant, of course, has a right to present a defense. And in this case he did. What he doesn't have a right to do is present unrebutted psychological testimony. We couldn't even cross-examine Dr. Frumkin until the psychologist on our end was able to evaluate the defendant. For all we know, he would have agreed with Dr. Frumkin. But we certainly can't even cross-examine Frumkin without that personal evaluation as noted by the doctor. Lee is just inapplicable if you want to get rid of Lee on a procedural basis. That's how I would do it. I understand, counsel. Thank you very much. With regard to Lee, just as Ellis pointed out, it basically said unequivocally, unless you can point to a rule which allows this examination, it's not allowed. Is that correct? That's what Lee said, but that's not what the rule says. Or that's not what the statute says. We have to follow their interpretation unless, you know, it's changed. Well, you can certainly come up with the notion that, as Justice McBride noted, 115.6 is not a preclusion of this. What it is is a very literal inclusion of some things. It doesn't exclude what happened here, as the judge noted. Well, let's flip the question a little bit. Can you point to a case that did not involve the insanity defense and where the court ordered the defendant against their objection and allow this examination? Buchanan v. Kentucky involved extreme emotional disturbance. In Illinois? Because we are bound somewhat by whatever Lee says. Yes, an Illinois case. No, because this has never been raised before. Because they're using this as a shield and a sword. It's a very clever argument. And they're trying to use the literal confines or the literal statutory interpretation of 115.6. But again, as noted by the trial judge and Justice McBride, 115.6 does not preclude what happened in this case. It does not specifically allow a defendant to use unrebutted psychological testimony. It merely claims that when A, B, or C happens, this must happen. During the pendency of the Lee case, the Supreme Court did change the rules to make this applicable to death penalty cases. And what that did, it allowed the state to get a copy of the expert reports. But if we go up to 411, we look further, it gives a list of things that the defense now has to give the state, including medical reports and all kinds of body samples and including also mental health reports. Correspondingly, if we look further down, however, while they require the giving of mental health reports, they do not likewise require in that rule a mental health examination. While they do require a physical examination. Was that an accident? Well, what I'm saying to you is that they specify what you have to give over, including mental health and physical reports, physical condition and mental health condition. However, when they say, well, you have to require, the defendant is required for discovery to submit to a physical examination, they are not likewise required to, in that rule, to submit to a mental examination. Physical examinations and psychological examinations are two very distinct things. There's no reason to submit to a physical examination. Psychological examination is wholly distinct. Lee has to be very limited to the facts of the case and the rule of law at that time, which did not mandate discovery for the state or for the defense to tender to the state in death hearings. Right. Well, they did require them to deliver the paper. But the point I'm trying to make is that while there is a requirement for a physical examination and physical samples in the discovery rules, there is no requirement for a mental examination in those rules. Correct. Not a requirement. Therefore, we have to look to 115.6. Right. And in this case, they make clear that there is no insanity defense. Correct. So we're basically talking about fairness. And the Supreme Court adjusts this fairness question. And Lee, they said, we understand the state is going to have a tough time with this. And in the initial state, they didn't even have the report. But now they do have a report. So in our case, they could look at the reports and make whatever rebuttal. They do have a right to rebut. They just can't examine the defendant. We couldn't rebut Dr. Frumkin without the evaluation of the defendant. Dr. Frumkin's notes, as Dr. Hartman and Dr. Henry apparently both communicated to the prosecutor, that they looked at Dr. Frumkin's notes and they were inadequate for them to make any type of evaluation based on the mental status that the defense wanted to present in this case. 115.6 does not preclude the court from ordering a court examination in rebuttal when a defendant puts his mental health status at issue. Because again, this interferes with the entire truth-seeking function of a trial. Without that type of evidence, if the defense is allowed to present Dr. Frumkin and we are unable to rebut that in any way, then the jury is left with the one-sided impression that, A, this is true and that they are not getting the full evaluation of the defendant, as noted in Kansas v. Cheever. And again, there is no Fifth Amendment implication here. The trial court specifically ruled several times that neither the psychiatrist nor the psychologist would be allowed to ask the defendant anything about the crime itself. That's not a Fifth Amendment implication. He was never denied his right to present a defense. He did present his defense. Not an unrebutted psychological testimony defense. Inability to rebut is different than not having the opportunity to rebut. But in an insanity case, the jury can't just say, well, I heard he was unstable when he made this statement. They can't find him not guilty because of insanity because the instructions wouldn't be present in this case. Is that correct? I don't know what would have happened in this case. Well, without him declaring insanity defense, that instruction would not be given. But I don't know what kind of instruction would have been given had Dr. Frumkin been allowed to testify unrebutted. I'm not sure what your question is, I suppose. Well, I'm saying that the jury would not have been instructed. They could find the defendant not responsible because of his mental status, not responsible for his actions. I presume. But again, I don't know what the jury is going to think if they're only getting this piece of information and thinking that it might be true and unrebutted. It's uncontested. Who knows what the jury could do in an equity thought in deliberations. That's what we're trying to do here. You're doing an equity thought. Sure, absolutely. But we're lawyers here, and we have to abide by what the Supreme Court says. I'm asking you to do that very thing in Kansas v. Chief. Well, I have to follow our Supreme Court. Thank you. You don't need to follow Lee. You don't need to follow Lee. It's distinguishable because of the procedural issue of where that happened in the capital sentencing hearing thing. Does anyone else have any questions, any of my colleagues? Justice Berard-Ellis. All right. Short rebuttal. Thank you very much, Ms. Cook. Thank you, Your Honors. I guess I'll just point out that Lee made it pretty clear that the statute doesn't permit this. As he pointed out, the Supreme Court rules have been amended since Lee. We certainly aware of Lee, didn't make any amendment that would suggest that Lee was wrongly decided. So the fact that there have been changes to what needs to be turned over and still it's just not authorized is kind of inquiring to the defendant personally, suggests that the court was aware of Lee when it was making his amendment. So that would be my only point there. If Your Honors has no further questions, we ask you to grant Mr. Comey a new trial. Any other questions? I'll ask one question. The two cases you rely on, Lee and Harlacker, both involved confessions given to the police during the course of interrogation. Did they not? Yes, Your Honor. And Lee? Well, neither case involved what we have here. We do not have a confession. We have a consensual over here involving a statement made to a third party who agreed to have a conversation recorded. Does that take us out of Lee? Does that take us out of Harlacker? Does that take us out of these cases or not? It doesn't take us out of those cases. The fact that, you know, the confessions, confessions are normally going to come up in a custodial interrogation type setting. Well, there's no such thing as a confession that's not in a custodial interrogation setting. Well, the confession and culpatory statements, incriminating statements. And the cases that say the defendant is allowed to present the circumstances surrounding confessions have never made that distinction that the confession has to be only in a custodial setting. He's allowed to present evidence to describe the jury. I think the Crane case cited in the opening brief, the U.S. Supreme Court case says all of the circumstances that prompted the statements. So the fact that, you know, those cases dealt with a different factual circumstance in which the inculpatory statements came out doesn't mean that these rules aren't still applicable. You're aware, though, in practice, aren't you? That when a defense presents a mental health expert to comment on, you know, whether someone was suggestible or not, that the state then does the same thing and rebutts it with their own expert. And that in those cases, there's an examination involving the defendant by the expert witness. In practice, that's going on right now. I guess I'm not totally sure of the question. All right. Well, the next case we have actually for orals today involved that very situation. Anyway, my concern is abusive discretion.  and said, what you're trying to do directly or indirectly, rather, is put this insanity defense in front of the jury, and they may buy it when you're not really raising that. And he said, I'll let the state have their examination. And he puts specific parameters on it. So I don't know if that's an abusive discretion. But I think both sides have been argued well. And it's an unusual factual situation and a very significant case. So thank you for your arguments. Thank you. The case is well argued and well briefed. We'll take it under advisement and a decision will be issued in due course. Thank you very much. Thank you.